BOEHM, Justice,
concurring and concurring in result.
I concur in Part I of the majority opinion and agree with the portion of Part II holding that the State is not authorized to challenge a sentence by cross-appeal. I also agree with the result reached by the majority, namely that McCullough's sentence remains as entered by the trial court. I reach that result through a somewhat different path.
I. The Genealogy of Indiana's Judicial Article
Justice Dickson's opinion for the majority uncovers a rich and interesting history of the events leading up to the 1970 adoption of a revised Article 7 of the Indiana Constitution that overhauled the Indiana judiciary and introduced a number of concepts new to our jurisprudence.
As one who graduated from law school in 1963 and was a practicing lawyer in Indiana throughout the period leading up to the voter's adoption of this amendment, I cannot altogether separate my own impressions of this period from the paper trail that Justice Dickson outlines. I ultimately reach the conclusion that he does: the language of Article 7, Section 4 authorizes appellate courts to revise a sentence either upward or downward. I do not believe, however, that this leads to the conclusion that this Court should consider itself equally ready to revise in either direction, or that the defendant's decision to appeal the sentence is relevant to whether this Court may revise it upward.
I believe the history of the 1970 amendment demonstrates that appellate review was to be encouraged, but also indicates a strong disposition against upward revision of sentences. First, I do not think these issues were carefully considered by either the study committee, the legislature, or the voters. The public discussion of the revisions to Article 7 focused on the selection process for the appellate bench, which changed Indiana from a state that chose its appellate judges by contested partisan election every six years to the merit selection plan we now have. The authors and proponents of this were civil lawyers. I knew the three members of the study commission that recommended adoption of the American Bar Association proposal to authorize appellate review of sentences. C. Ben Dutton, William M. Evans, and Robert V. Bridwell were all well-known Indianapolis attorneys engaged, so far as I recall, either exclusively or overwhelmingly in civil practice. A search of the attorneys field in reported cases confirms this. All three, like me, were educated at a time when the conventional wisdom in the United States was that sentencing was a trial court function, best left to the judge who is most familiar with the defendant and the *752 circumstances of the case. All three, like me, had little practical experience with the criminal justice system. From this I conclude that the study committee's recommendation was little more than a blind acceptance of the provisions adopted in the ABA's Model Judicial Article.
We are, however, explicitly instructed to consider the Commission's report in construing this constitutional provision. In the Joint Resolution agreeing to the proposed amendment, the General Assembly advised that "[the report of the Judicial Study Commission and the comments to the article contained therein may be consulted by the Court of Justice to determine the underlying reasons, purposes and policies of this article and may be used as a guide in its construction and application." H.J.R. 12, 96th Gen. Assem., Reg. Sess., Ind. Acts, Ch. 457, at 1858 (Mar. 10, 1969). The Indiana Judicial Study Commission's endorsement of the ABA Model Judicial Article is therefore relevant.
And what should we make of the ABA recommendation? It was not that appellate courts should review and revise sentences. Rather it was that sentences should be subject to appellate review "under such terms and conditions as the [state] Supreme Court shall specify by rules." In other words, this proposal contemplated a fleshing out of the procedures and conditions that would govern an appellate court's review and revision of sentences. It explicitly asked the voters adopting this provision as a constitutional amendment to give the state Supreme Court the authority to prescribe whether and how this appellate function should be carried out. As the majority points out, the ABA commentary, adopted by our study commission, explained that "[t]he proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." Op. at 748.
II. Revision of Sentences
I agree with the majority that the British background at the time is therefore significant but I draw a different conclusion from that background. Although a 1907 English statute explicitly authorized an upward or downward revision, as the majority notes, by the time Indiana considered this issue in the 1960s, the British courts had virtually abandoned upward revisions. It seems reasonable to infer that the working assumption of the proponents of the ABA Model was that American judges would come to the same conclusion, and would undertake appellate review of sentencing but largely, if not completely, abandon upward revisions.
As we have noted before, a principal concern leading to the recommendation favoring appellate review of sentences was the perception that sentences were not evenly imposed across the state. Rather than adopt a mechanical approach along the lines of the Federal Sentencing Guidelines, it was thought that appellate review could address the major inequities. The initial response of the Indiana Supreme Court was to adopt a rule that prescribed no procedures, but adopted a substantive standard of review that virtually precluded appellate revision. In 1972 the predecessor of Appellate Rule 7 was adopted calling for affirming a sentence unless it was "manifestly unreasonable," thus requiring an appellate declaration that the trial court had lost its bearings altogether before the appellate court would act. As might be expected, few sentences were disturbed under this regime. But increased concern for disparity in sentencing led to the amendment of the rule in 2000 to provide for revision of a sentence that was "inappropriate in light of the nature of the *753 offense and the character of the offender." Under that provision the appellate courts of Indiana have engaged in more frequent revision of sentences, but to date have never increased a sentence. I acknowledge, as the Court of Appeals noted in this case, that this Court has increased sentences on individual counts in the process of reducing the sentence in aggregate. Monroe v. State, 886 N.E.2d 578 (Ind.2008) (revising five consecutive twenty-year sentences to five concurrent fifty-year sentences). But we have held that "[ulltimately the length of the aggregate sentence and how it is to be served are the issues that matter," Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind.2008), and neither this Court nor the Court of Appeals has increased an aggregate sentence. In my view that is the proper result and the result anticipated by those who proposed leaving this issue to resolution by Supreme Court rules.
It would seem that the Constitution contemplates rules fleshing out the appellate review of sentences, but Indiana and most other jurisdictions have addressed the issue, if at all, in case law. I have no objection to proceeding by case law, but I do not join in the holding that appellate upward revision is dependent on the defendant's challenging his sentence. As we confirm today, the State can neither appeal nor cross-appeal a sentence. The majority would permit the State to argue for an increased sentence if the defendant challenges the sentence. I assume this means that no argument for an increased sentence is to be presented in the State's appellate briefing unless the defendant has sought to invoke the appellate court's review and revise power.
This scheme seems impractical to me. First, I assume the appellate court could exercise its review and revise power whether or not the State requested it. It would not take Louis Brandeis to figure out how to smuggle an argument for an increased sentence into a brief ostensibly addressing other issues. More importantly, even if the appellate court would not address the sentence unless one or more parties requests it, upward sentence revision would be at risk only if the defendant initiates the debate over the sentence. This puts the defendant's counsel in a very awkward position if upward revision by an appellate court is a realistic prospect. Often the sentence is the only viable issue in the appeal that Article 7, Section 6 of the Indiana Constitution guarantees. We should not force counsel to choose among raising the issue and obtaining an increased sentence, or foregoing the issue and either waiving appeal or raising frivolous issues.
It seems highly unlikely that in practice Indiana's appellate courts will frequently exercise their power to increase a sentence. Although I agree we have had that power for thirty-six years, neither this Court nor the Court of Appeals has ever exercised it. We have tacitly, and without awareness of the British legacy Justice Dickson has outlined, followed our British cousins in foregoing upward revision of sentences. In my view we should forth rightly state that although we have that power, we have never exercised it and do not expect to exercise it in the future except in the most unusual case. This will leave defendants free to exercise their constitutional right to appeal without great concern for retribution, eliminate concern for ineffective assistance claims based on taking an appeal that backfired, and avoid the temptation for the State to disguise a sentencing argument in some other garb.
RUCKER, J., concurs in Part II.